**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

JACOB DRAKE, individually and on behalf of all others similarly situated,

Plaintiff,

Case No. 8:26-cv-00697-WFJ-AAS

v.

EMORTGAGE FUNDING, LLC,

Defendant.
_______________________________________/

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT AND TO STRIKE CLASS ALLEGATIONS**

## I. INTRODUCTION

Defendant eMortgage Funding, LLC ("eMortgage") has litigated this motion before—and lost. In *Delgado v. eMortgage Funding, LLC*, No. 21-CV-11401, 2021 LX 26521 (E.D. Mich. Oct. 13, 2021), the court denied eMortgage's motion to dismiss a claim under 47 C.F.R. § 64.1200(d) on near-identical facts—fourteen calls in the four days after a stop request—because "[t]he Court cannot determine the reasonableness of this delay on the pleadings alone." Here, the First Amended Complaint pleads that Defendant placed ***ten telemarketing calls in two days*** to a residential telephone number registered on both the National and the Florida Do-Not-Call registries. On every call he told eMortgage's representatives he had never consented, was on both registries, and to stop calling—and the calls continued.

Defendant moves to dismiss Counts 2, and 3 and strike two of Plaintiff's proposed class definitions. That means Counts 1, 4, and 5 will proceed regardless. What remains mistakes summary-judgment ceilings for pleading floors and asks this Court to ignore allegations it must accept as true. The Motion should be denied in full.

## II. ARGUMENT

### A. The FAC pleads a plausible claim under § 227(c) based on Defendant's failure to institute the "minimum standards" required to "initiate any [telemarketing] call" under § 64.1200(d).

Plaintiff alleges he received multiple calls from Defendant within a 12-month period in violation of FCC regulation 47 C.F.R. § 64.1200(d), which provides, in part:

> No person or entity shall initiate ***any call*** for telemarketing purposes to a residential telephone subscriber unless such person or entity has ***instituted procedures*** for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity.

*Wagner v. CLC Resorts & Devs., Inc.*, 32 F. Supp. 3d 1193, 1197–98 (M.D. Fla. 2014).[1] There are six "minimum standards" that "[t]he procedures instituted must meet[.]" *Id.* They include, (1) a written policy for maintaining a do-not-call list, (2) training of personnel on the existence and use of the do-not-call list, and (3) recording and honoring do-not-call requests within a reasonable time. § 64.1200(d)(1)-(6).

Defendant's assertion that it stopped calling Plaintiff within some non-existent "regulatory compliance period" is legally inaccurate and factually false, as discussed *infra*, but it is also a *red herring*. Recording and honoring do-not-call requests within a

[1] Emphasis added and internal citations and quotations omitted unless otherwise noted.

reasonable time ***is only one of the six*** "minimum standards" that telemarketers must institute to make "any call." *See* § 64.1200(d). In other words, failing to honor a do-not-call request is not, itself, the violation. "Based on the wording of the regulation, a violation of section 64.1200(d) is '***the initiation of the phone call*** without having ***implemented the minimum procedures***.'" *Wagner*, 32 F. Supp. 3d at 1198; *see also Buja v. Novation Capital, Ltd. Liab. Co.*, 2017 U.S. Dist. LEXIS 231500, at *13 (S.D. Fla. Mar. 30, 2017) ("'The regulations do not prohibit "actually calling an individual after the individual has requested placement on a do-not-call list…nor do the regulations specifically proscribe failing to record an individual's request to be placed on a do-not-call list."'").

The Motion asserts that Plaintiff does not "plead[] facts concerning Defendant's actual written policies, personnel training, recordkeeping, or internal do-not-call procedures," but "merely alleges that Defendant failed to honor his alleged do-not-call requests within a reasonable time and then infers that Defendant therefore failed to maintain the procedures required by § 64.1200(d)." Mot. at 5–6. Not so. This ignores the FAC's specific allegations that Defendant failed to meet the minimum standards for the procedures that § 64.1200(d) requires. FAC ¶¶ 33, 35, 36, 38, 39, 43-52, 54.

These are not "speculative inferences untethered to any well-pleaded facts regarding Defendant's internal compliance practices" as the Motion contends. Mot. at 6. These are admissions from a party opponent: eMortgage's own representatives conceded to Plaintiff—on the calls—that no notation of Drake's prior stop requests had ever been made, and they promised to add his number to the internal do-not-call

list but never did. FAC ¶ 51. Those concessions map onto § 64.1200(d)(3) (recording the request when made) and (d)(6) (record maintenance). The FAC pleads the training failure too: eMortgage's representatives displayed "an utter lack of knowledge of the TCPA." *Id.* ¶ 54; *see* 47 C.F.R. § 64.1200(d)(2). And it pleads the failure's mechanics: suppression lists key off the called number, so any functioning list would have blocked nine of the ten calls placed from ten different originating numbers across two days. FAC ¶¶ 33, 52.

These admissions from eMortgage's representatives alone are sufficient to demonstrate a failure to meet the required "minimum standards," and they are further supported by Defendant's failure to meet another one of the "minimum standards" to honor not only Plaintiff's do-not-call requests within a reasonable time, but also the do-not-call requests of at least 22 other consumers whose internet complaints or lawsuits regarding continued calls despite a do-not-call requests are specifically pleaded in the FAC. *Id.* ¶¶ 55–58.

These allegations—that must be accepted as true and construed in the light most favorable to Plaintiff—easily plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In fact, these allegations exceed what courts hold sufficient—including against this same defendant. In *Delgado*, eMortgage moved to dismiss a § 64.1200(d) claim on near-identical facts (fourteen calls in four days after a stop request) and lost: the plaintiff "plausibly alleged that defendant has failed to institute adequate procedures…given the calls' persistence days after plaintiff asked that they cease." 2021 LX 26521, at *12. Courts in this circuit agree: "it may be

inferred that 'internal do-not call procedures are deficient when calls to an individual who has requested not to be called continue.'" *Bosley v. A Bradley Hospitality LLC*, 2025 U.S. Dist. LEXIS 183986, at *20 (S.D. Fla. Sep. 18, 2025) (denying dismissal); *accord Taylor v. Cider (US) Holding Ltd.*, 2026 U.S. Dist. LEXIS 6252, at *9 (S.D. Fla. Jan. 13, 2026) ("courts have routinely found" that inference).[2]

Defendant asserts that placing at least 10 calls to Plaintiff over a two-day period falls within something it calls a "regulatory compliance period." Mot. at 7. There is no

---

[2] *See also Daschbach v. Rocket Mortg., LLC*, 2023 U.S. Dist. LEXIS 48139, at *31 (D.N.H. Mar. 22, 2023) ("The court can reasonably infer from this allegation [that defendant sent plaintiff two text messages following a do-not-call request] that Rocket Mortgage failed to institute procedures to prevent such errors."); *Persichetti v. T-Mobile USA, Inc.*, 479 F. Supp. 3d 1333, 1340 (N.D. Ga. 2020); *Simmons v. Charter Commc'ns, Inc.*, 222 F. Supp. 3d 121, 139 (D. Conn. 2016), affd, 686 F. App'x 48 (2d Cir. 2017) (stating that the "existence of a single failure to record and honor an individual's request to be placed on a [do-not-call] list can be evidence of a failure to implement proper procedures . . . ."); *Cahill v. Pryor S.C.*, 2024 U.S. Dist. LEXIS 161185, at *3 (N.D. Ill. Sep. 9, 2024) ("The reasonable inference to draw therefrom is that PryorHealth did not honor her opt-out request because it did not have policies, personnel training, or do-not-call request tracking in place to prevent this unwanted contact."); *Adam v. CHW Grp., Inc.*, 2021 U.S. Dist. LEXIS 170620, at *22 (N.D. Iowa Sep. 9, 2021) ("Adam requested that CHW stop calling him, CHW did not, and based on CHW's failure to stop calling him, Adam alleges that CHW violated the procedures required in…§ 64.1200(d)."); *Watkins v. EyeBuyDirect, Inc.*, 2025 U.S. Dist. LEXIS 167479, at *8 (W.D. Tex. Aug. 28, 2025) (finding plaintiff adequately pled claim under 47 C.F.R. § 64.1200(d) because courts have inferred that TCPA internal do-not-call procedures are deficient when calls to an individual who has requested not to be called continue); *Gill v. Align Tech. Inc.*, 2022 U.S. Dist. LEXIS 87464, at *9 (E.D. Wis. May 16, 2022) ("This escalation in contact, seemingly in direct response to Plaintiff's requests to stop contact, plausibly indicates that Align violated the TCPA's regulations by failing to honor Plaintiff's do not-call requests within a reasonable amount of time.") (citing *Nece v. Quicken Loans, Inc.*, 2018 U.S. Dist. LEXIS 42356, at *18–19 (M.D. Fla. Mar. 15, 2018)); *Mattson v. Quicken Loans, Inc.*, No. 2018 U.S. Dist. LEXIS 180737, at *6 (D. Or. Oct. 22, 2018).

such thing. The applicable FCC regulations require that do-not-call requests be honored "***within a reasonable time*** from the date such request is made." 47 C.F.R. § 64.1200(d)(3). While the regulation notes that "[t]his period may not exceed 30 days[,]" eMortgage already learned from its loss in *Delgado* that the regulation "does not state that any shorter delay is per se reasonable." *Delgado*, 2021 U.S. Dist. LEXIS 196785, at *12-13. Whether a consumer's do-not-call request was honored within a "reasonable time" is a jury question. *Nece v. Quicken Loans, Inc.*, 2018 U.S. Dist. LEXIS 42356, at *18 (M.D. Fla. Mar. 15, 2018) ("[A] jury must decide whether Quicken honored Nece's do-not-call request in a reasonable time."); *Buja v. Novation Cap., LLC*, No. 15-81002-CIV, 2017 WL 10398957, at *6 (S.D. Fla. Mar. 31, 2017) (same). That is why the *Delgado* court told eMortgage that it "cannot determine the reasonableness of this delay on the pleadings alone." *Delgado*, 2021 WL 4776774.

At this pleading stage, "the Court must accept as true [plaintiff's] allegation that 'Defendant has the capability of immediately complying with Plaintiff's [do-not-call] request[.]'" *Lourie v. Papa John's Int'l, Inc.*, No. 1:23-CV-4320-MHC, 2024 U.S. Dist. LEXIS 119679, at *9-10 (N.D. Ga. June 25, 2024); *see also* ¶¶ 47–48; *In Re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014, 14069, 2003 WL 21517853, at *34 ("[t]elemarketers with the capability to honor such company-specific do-not-call requests in less than thirty days must do so."). Based on Plaintiff's allegation that Defendant had the ability, but failed to immediately comply with Plaintiff's do-not-call request, the FAC adequately pleads

that eMortgage failed to honor his do-not-call request "within a reasonable time." Yet that is but one of the "minimum standards" required by § 64.1200(d). Its representatives' admissions that Defendant does not meet the other minimum standards either is sufficient to plead a plausible violation of § 64.1200(d).

### B. Count 3 states a claim based on eMortgage's admissions regarding the use of an automated dialing system.

With respect to Count 3, "[m]ultiple different representatives of Defendant" told Plaintiff directly that they used an auto dialer to call Plaintiff. FAC ¶ 42. Defendant asserts that the FAC "fails to plausibly allege that Defendant utilized an automated system" because it does not "identify which representatives allegedly made those statements, during which calls they were made, whether the statements related to all or only some of the alleged calls,…the substance of the conversations from which Plaintiff draws that conclusion[; or]…any facts regarding the operation or characteristics of the alleged dialing system that would independently permit the Court to infer that Defendant utilized an automated system." Mot. 8–9. This ignores the direct admissions from Defendant's own representatives. Plaintiff did not "draw a conclusion," and the Court does not need to "independently infer" that Defendant's representatives meant what they said. Defendant also fails to explain why the identity of its representatives or the calls on which those statements are relevant, or why it is relevant that some or all of the calls were placed using an automated dialer when a single call constitutes a violation. Further, Defendant's representatives' admissions make it unnecessary for Plaintiff to allege facts regarding the "operation or

characteristics of the alleged dialing system"—Defendant's representatives said they used a dialing system.

Defendant's reliance on *Davis v. Coast Dental Servs., LLC*, 2022 U.S. Dist. LEXIS 165475 (M.D. Fla. Sep. 13, 2022), is misplaces. That case dismissed an FTSA claim because the lone alleged text was "also consistent with Coast Dental hiring a marketing firm to send individual messages from a personal cell phone." *Id*, at *6. An admission of automation is not "consistent with" manual dialing. It forecloses that alternative explanation. Post-*Davis* decisions of this Court confirm that such allegations suffice. *Simpson v. J.G. Wentworth Co.* distinguished *Davis* by name and drew "the common-sense inference that the call was placed using an automated system" from call characteristics alone. 2024 U.S. Dist. LEXIS 11395, at *13 (M.D. Fla. Jan. 23, 2024). *Lopez v. Consumer Safety Tech. LLC* held that "no particular set of facts is required to plead use of an automatic system" and that mass-calling allegations suffice "[e]ven without alleging the specific system used." 2024 U.S. Dist. LEXIS 84873, at *7, 9 (M.D. Fla. May 10, 2024)

Defendant's reliance on *Phoenix Ent. Partners* does not fill the gap. It is a magistrate judge's report and recommendation on a default-judgment motion in a karaoke trademark case, and its rule reaches only allegations made upon information and belief "that do not contain any factual support." 2016 U.S. Dist. LEXIS 51637, at *11-13 (M.D. Fla. Mar. 30, 2016). Plaintiff's core allegations are not made on information and belief at all. They are first-hand: he received ten calls, heard the

scripted misidentification, and heard the admissions of automated dialing. FAC ¶¶ 33, 41–42. Count 3 states a claim.

**C. Plaintiff plausibly alleges knowing and willful conduct.**

Defendant categorically asserts that Plaintiff's allegations that the violations were willful and/or knowing are insufficient. This is incorrect, as numerous courts in this district have explained. *See, e.g.*, *Miceli v. Orange Lake Country Club, Inc.*, 2015 U.S. Dist. LEXIS 117226, at *13 (M.D. Fla. Aug. 5, 2015) (continued calls after do-not-call request stated knowing or willful violation) (citing *Coniglio v. Bank of Am.,* 2014 U.S. Dist. LEXIS 149764, at *3 (M.D. Fla. 2014)); *Baxter v. VSC LLC*, 2018 U.S. Dist. LEXIS 41650, at *20 (M.D. Fla. Mar. 13, 2018) (finding "allegations regarding possible treble damages are sufficiently pled.").

Courts require only that a party's actions were intentional, not that it was aware that it was violating the statute. *See, e.g., Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011) (holding that the treble damages TCPA requires mere "knowing" conduct, not wanton or malicious conduct); *Wakefield v. ViSalus, Inc.*, 2019 U.S. Dist. LEXIS 104862, at *3 (D. Or. June 24, 2019) ("[T]he Court adopts the more common interpretation that 'willfully' or 'knowingly' requires only that an unlawful act be done intentionally or volitionally, as opposed to inadvertently, and not that Defendant must have known that its conduct would violate the statute."). Courts generally decline to require specificity regarding whether violations were knowing and/or willful that can only be provided through discovery. *See Gulden v. Liberty Home*

*Guard LLC*, 2021 U.S. Dist. LEXIS 33833, at *16 and n.4 (D. Ariz. Feb. 23, 2021) (collecting cases holding that knowing/willful violations may be generally alleged).

Defendant's reliance on *Lary v. Trinity Physician Financial & Insurance Services*, 780 F.3d 1101 (11th Cir. 2015), is misplaced. *Lary* arose was a default judgment, where only well-pleaded factual allegations—not legal conclusions—are deemed admitted. *Id*. at 1106–07. The Eleventh Circuit denied treble damages because the complaint failed to allege facts showing that the defendants knew they were calling an emergency line or that the fax at issue was unsolicited, both of which are predicates under § 227(b)(1)(A)(i) and § 227(b)(1)(C). *Id*. at 1107. Here, Plaintiff alleges facts supporting an inference that Defendant knowingly authorized and deployed the telemarketing calls to cellular telephones without consent and after the recipient had already opted out, which is sufficient at the pleading stage to support a claim for treble damages.

Contrary to Defendant's assertion, the FAC pleads far more than conclusory labels and plausibly alleges willful and knowing violations of the TCPA. Plaintiff alleges that Defendant intentionally placed calls to Plaintiff despite knowing lacked consent. FAC at ¶ 30, 31, 34. It pleads that Defendant has a long history of TCPA non-compliance and consumer complaints. *Id*. at ¶¶ 55-58. And district courts in this circuit regularly find knowing or willful conduct in TCPA cases where a defendant continues to communicate despite a do-not-call request. *See Jackson v. Athena Bitcoin, Inc.*, 2025 U.S. Dist. LEXIS 159043, at *3 (N.D. Fla. June 24, 2025).

At minimum, Plaintiff is entitled to discovery on Defendant's knowledge and intent, and treble damages cannot be dismissed where the Amended Complaint plausibly alleges deliberate, telemarketing calls without consent and after opt-outs.

**D. The Court should deny Defendant's motion to strike class allegations.**

Defendant moves to strike Plaintiff's proposed TCPA internal do-not-call class as overbroad "because it includes all persons who received two or more telephone solicitations after making a company-specific do-not call request, without regard to whether those calls occurred after expiration of the regulatory compliance period prescribed by 47 C.F.R. § 64.1200(d)(3)." "It is rarely proper for a court to strike class allegations based only on the face of the complaint." *Lopez v. Consumer Safety Tech.*, 2024 U.S. Dist. LEXIS 84873, at *9 (M.D. Fla. May 10, 2024) (citing *Herrera v. JFK Med. Cntr.*, 648 F. App'x 930, 934 (11th Cir. 2016)).

*Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309, 1310–11 (11th Cir. 2008), held it an abuse of discretion to reject class treatment "at this complaint-pleading stage," before the plaintiffs "at least should have been granted an opportunity to conduct limited discovery relevant to the certification issue." *See also Herrera v. JFK Med. Ctr., Ltd*. P'ship, 648 F. App'x 930, 936 (11th Cir. 2016) ("We hold [] that the district court should have allowed limited discovery instead of striking the class allegations based solely on the face of the complaint.").

A defendant moving before discovery bears "the burden of demonstrating from the face of plaintiffs' complaint that it will be impossible to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove." *Lopez*, 2024

U.S. Dist. LEXIS 84873, at *10 (quoting *Romano v. Motorola, Inc.*, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007)). It is "rare" for courts to strike class allegations before certification motions and discovery, and courts find it "premature to strike the class allegations at this stage in the proceedings." *Xenes v. Powur, PBC, Inc.*, No. 1:23-cv-22787-KMM, 2024 U.S. Dist. LEXIS 76156, at *12 (S.D. Fla. Apr. 26, 2024). And in W*hitsel v. LoanDepot.com, LLC*, the court denied a motion to strike TCPA class allegations premised on individualized issues including consent, because "[w]hether Plaintiff's claim deserves class treatment is a fact-dependent inquiry unsuitable for a motion to dismiss or strike," and pleading-stage dismissal of class allegations "is an extreme remedy appropriate only where a defendant demonstrates from the face of the complaint that it will be impossible to certify the classes alleged by the plaintiff regardless of the facts the plaintiff may be able to prove." No. 8:21-cv-1433-VMC-TGW, 2021 U.S. Dist. LEXIS 180331, at *7 (M.D. Fla. Sep. 22, 2021) (cleaned up) (quoting *Shamblin v. Obama for Am.*, No. 8:13-cv-2428-VMC-TBM, 2014 WL 631931, at *2 (M.D. Fla. Feb. 18, 2014), and *Oginski v. Paragon Props. of Costa Rica, LLC*, No. 10-21720-CIV, 2011 WL 3489541, at *3 (S.D. Fla. Aug. 9, 2011)); *see also Tickling Keys, Inc. v. Transamerica Fin. Advisors, Inc.*, 305 F. Supp3d 1342, 1347 (M.D. Fla. Apr. 3, 2018) ("Defendant also urges the Court to dismiss Plaintiff's 'class allegations' under Rule 12(b)(6) because they fail to support a putative class action. Such an argument is premature."); *Feldman v. BRP United States, Inc.*, 2018 U.S. Dist. LEXIS 53298, at *29 (S.D. Fla. Mar. 28, 2018) ("Defendant's arguments for dismissal of the class allegations are better suited to an opposition for a motion for class certification");

*Fosbrink v. Area Wide Protective, Inc.*, 2017 U.S. Dist. LEXIS 134932 at *5 (M.D. Fla. Aug. 23, 2017) ("Here, Defendant's request to deny certification of the proposed classes is premature.").

In other words, Defendant's arguments are better addressed on a motion for class certification with a more complete record. *See Sos v. State Farm Mut. Auto. Ins. Co.*, 2018 U.S. Dist. LEXIS 67501, at *7 (M.D. Fla. Mar. 12, 2018) (declining to engage in such an analysis "at this stage of the litigation" and instead providing the parties the opportunity to address the issues raised by the defendant "in briefing class certification"); *Sullivan v. Gov't Emples. Ins. Co.*, 2018 U.S. Dist. LEXIS 219631, at *26 (M.D. Fla. Apr. 6, 2018) (explaining that "the shape and form of a class action evolves only through the process of discovery, and it is premature to draw such a conclusion before the claim has taken form.").

To seek to strike class allegations as Defendant has done here is to "preemptively terminate the class aspects of this litigation…before plaintiffs are permitted to complete the discovery for which they would otherwise be entitled on questions relevant to class certification." *Sullivan*, 2018 U.S. Dist. LEXIS 219631, at *26; *Epler v. Air Methods Corp.*, 2021 LX 20591 at *5 (M.D. Fla. Jun. 30, 2021) (denying a motion to strike class allegations and "invit[ing] the parties to fully brief their respective positions at the class certification stage of the litigation"); *Lankford v. Carnival Corp.*, N2013 U.S. Dist. LEXIS 195672 at *18 (S.D. Fla. June 18, 2013) ("At this early stage in the litigation, taking the factual allegations in the Amended Complaint as true, the Court finds a ruling on the merits of the putative class

premature. … Because the Court finds a ruling on class certification premature, the Court does not further address the appropriateness of class treatment at this time.); *Feldman v. BRP United States, Inc.*, 2018 U.S. Dist. LEXIS 53298, at *29 (S.D. Fla. Mar. 28, 2018) ("Defendant's arguments for dismissal of the class allegations are better suited to an opposition for a motion for class certification"); *Fosbrink v. Area Wide Protective, Inc.*, 2017 U.S. Dist LEXIS 134932 at *5.

Accordingly, Defendant's motion to strike should be denied.

**1. Issues regarding the reasonableness of the timeframe in which the opt-out requests were honored do not support striking the proposed class definition.**

As the Eleventh Circuit has observed, "striking class allegations at the pleading stage is the functional equivalent of denying class certification." *Arkin v. Innocutis Holdings, LLC*, 188 F. Supp. 3d 1304, 1311-12 (M.D. Fla. 2016); *Herrera v. JFK Med. Ctr. Ltd. P'ship*, 648 Fed. Appx. 930, 935–36 (11th Cir. Apr. 26, 2016) ("We hold only that the district court should have allowed limited discovery instead of striking the class allegations based solely on the face of the complaint.").

The class definition is not overbroad nor lacks commonality merely because it includes individuals for whom Defendant may have honored the opt-out request within a reasonable time. Indeed, this is similar to class definitions in TCPA cases that do not reference a lack of consent, consent being an affirmative defense to certain TCPA claims. "The issue of consent does not ... present an individualized issue destroying the cohesiveness of the class." *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 687 (S.D. Fla. 2013). "As explained by the Fifth Circuit in *Gene*

*& Gene, LLC v. BioPay, LLC*, 541 F.3d 318, 327-28 (5th Cir. 2008) (*Gene & Gene I*), the issue of consent under the TCPA may, or may not, be individualized and it may, or may not, defeat certification, depending on the facts of the particular case." *Id.* Thus, "violations of the TCPA are not *per se* unsuitable for class resolution, and there are no invariable rules regarding the suitability of a particular case . . . for class treatment; the unique facts of each case generally will determine whether certification is proper." *Id.* (internal citations and quotation marks omitted). The same logic can and should be applied to issues of whether Defendant honored Plaintiff's and the proposed class members' opt-out requests within a reasonable time.

Contrary to Defendant's contention that the class definition must be stricken because "...the proposed class includes individuals who may have received calls during the regulatory compliance period and therefore may not have suffered any violation of § 64.1200(d)", see Mot. at 12, numerous decisions have held to the contrary in similar analysis of TCPA class definitions without a reference to lack of consent. As the court held in *Reyes v. BCA Fin. Servs.*, U.S. Dist. LEXIS 106449 at *39 (S.D. Fla. June 26, 2018), "[c]lass certification is not precluded simply because a class may include persons who have not been injured by the defendant's conduct.").

Further, Defendant's overbreadth argument fails in three ways. First, it rests on the same safe-harbor misreading of § 64.1200(d)(3) answered above. Second, there is no per se reasonableness inside thirty days: the regulation "does not state that any shorter delay is per se reasonable," *Delgado*, 2021 LX 26521 (denying this same Defendant's motion), and it does not "create a safe harbor for follow up calls placed

within thirty days after the first call," *Boger*, 2020 U.S. Dist. LEXIS 36517. Putative class members called within the window are not uninjured as a matter of law—so facial impossibility cannot be shown. Third, even if the class definition could be construed as impermissibly overbroad—which Plaintiff disputes—the proper remedy would not be striking Plaintiff's allegations, but rather to allow the class definition to be amended or altered by the Court. "Rule 23(c)(1) specifically empowers district courts to alter or amend class certification orders at *any* time prior to a decision on the merits." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1273 (11th Cir. 2000).

Defendant argues that under *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1275 (11th Cir. 2019), internal do-not-call claims require individualized determinations about whether each class member asked not to be called and whether each member's injury is traceable to the missing procedures—so the Internal DNC Classes should be stricken now. Mot. at 12–13. But that is a certification argument, not a pleading argument—and *Cordoba* says so: "we only hold that in this case the district court must consider under Rule 23(b)(3) before certification whether the individualized issue of standing will predominate." *Id.* at 1277. Before then, "all that the law requires is that a named plaintiff have standing." *Id.* at 1273. The court then disclaimed the categorical use Defendant makes of it: "Our decision does not mean that a substantially similar class cannot be drawn or certified, or that no class action premised on a failure to maintain an internal do-not-call list could succeed." *Id.*

## III. CONCLUSION

For all the reasons argued in detail above, Defendant's motion to dismiss and motion to strike both fail and should be denied. If the Court grants any part of Defendant's Motion, Plaintiff requests that it be without prejudice so that he may an opportunity to amend his complaint. *See* Fed. R. Civ. P. 15(a)(2).

Dated: July 22, 2026

Respectfully submitted,

*<u>/s/ Christopher Gold</u>*
Christopher Gold, Esq.
Florida Bar No. 088733
**GOLD LAW, PA**
350 Lincoln Rd., 2nd Floor
Miami Beach, FL 33139
Tel: 305-900-4653
chris@chrisgoldlaw.com

*<u>/s/ Garrett Berg</u>*
Garrett Berg, Esq.
Florida Bar No. 1000427
**Garrett Berg Law, P.A.**
555 NE 15th St., PH A
Miami, FL 33132
garrett@gberglegal.com

*Counsel for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the date set forth above, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which will serve a copy upon all counsel of record.

*/s/ Christopher Gold*
Christopher Gold, Esq.